# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

<u>C.A. No. 15-4045</u>

REUBEN DURST, Trustee, STEVEN DURST, Individually and as Trustee,

*Plaintiffs-Appellants*,

*v.*

MATTHEW DURST, Individually and as Trustee,
HALLORAN & SAGE, LLP, ROBINSON & COLE, LLP,
and KELLEY GALICA-PECK,

*Defendants-Appellees.*

_____

## BRIEF OF DEFENDANT-APPELLEE
## ROBINSON & COLE, LLP

_____

On appeal from the United States District Court for the District of New Jersey, Civil Action No. 1:12-cv-05255 (Honorable Jerome B. Simandle, Chief United States District Judge).

MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP

PAUL H. ZOUBEK
MICHAEL C. WITSCH

Liberty View, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

*Counsel for Defendant-Appellee
Robinson & Cole, LLP*

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

In accordance with Rule 26.1, Defendant-Appellee Robinson & Cole, LLP, states that no parent or public corporation owns ten-percent or more of its stock.

# TABLE OF CONTENTS

**Page**

COUNTER-STATEMENT OF JURISDICTION ..................................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED ................................1

STATEMENT OF RELATED CASES ...................................................................2

COUNTER-STATEMENT OF THE CASE ..........................................................2

    A.    FACTS.............................................................................................2

    B.    PROCEDURAL HISTORY...............................................................5

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT ......................................................................................................11

I.    The District Court Appropriately Granted Summary Judgment To R&C ............................................................................................................11

    A.    Applicable Standard of Review........................................................12

    B.    The District Court Properly Rejected Plaintiffs' Limited Legal Malpractice Claims Against R&C On The Undisputed Facts ..........13

        1.    The District Court Properly Held That R&C Was Not Responsible for Attorney Peck's Conduct Before Joining The Firm In October 2010 ......................................................14

        2.    The District Court Correctly Held That Plaintiffs Did Not Suffer Any Harm As A Result Of The Alleged Misconduct...............................................................................16

        3.    Plaintiffs' Final Appellate Claim Is Unpreserved ..................22

    C.    The District Court Properly Declined Plaintiffs More Time To Respond To R&C's Motion For Summary Judgment .......................23

        1.    Applicable Standard of Review ...............................................23

        2.    The District Court Did Not Abuse Its Discretion In Refusing To Defer Ruling On R&C's Motion ........................23

# TABLE OF CONTENTS
(continued)

**Page**

II.    The District Court Did Not Abuse Its Discretion In Denying
       Plaintiffs' Third Attempt To File A Second Amended Complaint ..............25

    A.    Applicable Standard of Review..........................................................25

    B.    Even If The Second Amended Complaint Had Been Allowed, It
          Did Not Raise Any New Claims Against R&C And Could Not
          Have Altered The Judgment Already Entered In Its Favor ...............25

    C.    In Any Event, the District Court Did Not Abuse Its Discretion
          In Denying Plaintiffs Permission To File A Second Amended
          Complaint ........................................................................................27

III.   The District Court Did Not Err In Denying Plaintiffs' Global Motion
       For Reconsideration..........................................................................29

    A.    Applicable Standard of Review..........................................................29

    B.    Plaintiffs' Global Motion For Reconsideration Was
          Procedurally Deficient and Meritless................................................29

CONCLUSION .......................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Adams v. Gould Inc.*,
   739 F.2d 858 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985) ...............25, 28

*Anderson v. Consol. Rail Corp.*,
   297 F.3d 242 (3d Cir. 2002) ................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................12

*Boileau v. Bethlehem Steel Corp.*,
   730 F.2d 929 (3d Cir. 1984) ................................................................................25

*Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..............................................................................28

*Conklin v. Hannoch Weisman*,
   145 N.J. 395, 678 A.2d 1060 (1996) .......................................................13, 14, 15

*Cureton v. NCAA*,
   252 F.3d 267 (3d Cir. 2001) ................................................................................25

*Del. Nation v. Pennsylvania*,
   446 F.3d 410 (3d Cir. 2006) ........................................................................20, 22

*Doe v. Abington Friends Sch.*,
   480 F.3d 252 (3d Cir. 2007) ...............................................................................23

*First Union Nat'l Bank v. Penn Salem Marina*,
   190 N.J. 342, 921 A.2d 417 (2007) .............................................................20, 21

*Foman v. Davis*,
   371 U.S. 178 (1962).............................................................................................25

*Giles v. Kearney*,
   571 F.3d 318 (3d Cir. 2009) ...............................................................................12

*Goldenstein v. Repossessors Inc.*,
    815 F.3d 142 (3d Cir. 2016) ...............................................................12

*Gordon v. Lewistown Hosp.*,
    423 F.3d 184 (3d Cir. 2005) .......................................................17, 18

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241(3d Cir. 2009) ...............................................................20

*Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin, Tischman,*
    *Epstein & Gross, P.A.*,
    No. A-6595-06T2, 2009 N.J. Super. LEXIS 1861, 2009 WL
    2045259 (N.J. Super. Ct. App. Div. July 16, 2009) ....................15, 16

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) .................................................................28

*Massarsky v. General Motors Corp.*,
    706 F.2d 111 (3d Cir. 1983) ...............................................................25

*McGrogan v. Till*,
    167 N.J. 414, 771 A.2d 1187 (2001) ..................................................13

*McQueeney v. Wilmington Trust Co.*,
    779 F.2d 916 (3d Cir. 1985) ...............................................................26

*Mitchell v. Town of Willingboro Mun. Gov't*,
    913 F. Supp. 2d 62 (D.N.J. 2012).........................................30, 31, 32

*United States v. Dupree*,
    617 F.3d 724 (3d Cir. 2010) ...............................................................29

<u>Statutes</u>

28 U.S.C. § 1291 .....................................................................1, 3, 4

28 U.S.C. § 1332 ...............................................................................1

28 U.S.C. § 1391 ...............................................................................1

<u>Rules</u>

Fed. R. App. P. 32 ...................................................................................... 34

Fed. R. App. P. 33 ...................................................................................... 34

Fed. R. Civ. P. 56 ............................................................................ 12, 23, 24

Local R. Civ. P. 56.1 ................................................................................. 11

## **COUNTER-STATEMENT OF JURISDICTION**

The United States District Court for the District of New Jersey had subject-matter jurisdiction founded on the parties' diversity under 28 U.S.C. § 1332. Venue was proper pursuant to 28 U.S.C. § 1391 because the cause of action arose in the District.

This Court possesses appellate jurisdiction under 28 U.S.C. § 1291.

## **COUNTER-STATEMENT OF THE ISSUES PRESENTED**

The questions presented for review as to Defendant-Appellee Robinson and Cole, LLP ("R&C") are:

1.      Whether the District Court appropriately granted R&C summary judgment, where R&C could not be liable for the attorney in question's alleged professional negligence prior to her employment at R&C, and where Plaintiffs failed to prove that R&C caused them harm and the doctrine of collateral estoppel otherwise barred their claims;

2.      whether the District Court acted within its discretion in denying Plaintiffs' third attempt to file a second amended complaint; and

3.      whether the District Court appropriately denied Plaintiffs' global motion for reconsideration.

## STATEMENT OF RELATED CASES

R&C is aware of no related cases or proceedings besides those referenced herein. This case has not previously been before this Court.

## COUNTER-STATEMENT OF THE CASE

**A.    FACTS.**[1]

This appeal has its genesis in late 2004, when Steven Durst established the then-revocable Jake Ball Trust ("the Trust").  Steven named his brothers, Matthew Durst and Reuben Durst, as co-trustees. Supplemental Appendix (hereafter "SA") 41 (R&C MFSJ Ruling).  Among other assets, Steven Durst transferred to the Trust a ten-percent ownership interest in Goodmill LLC ("Goodmill"), an entity formed in 2005 to construct, lease, and operate a shopping center in Millville, New Jersey. *Id.* at 41-42. Goodmill's Operating Agreement reflected that the Trust owned a ten-percent membership interest. In December 2007, by written agreement with Matthew and Reuben as co-trustees, Steven Durst agreed to convert the Trust from a revocable trust to an irrevocable trust. *Id.* at 42. In exchange, the Trust gave

---

[1]    This recitation of facts is constructed from the District Court's rulings on: (1) Matthew Durst's motion for partial summary judgment, SA 2-21; and (2) R&C's motion for summary judgment. SA 39-57.

Steven Durst a $500,000 promissory note, secured by a collateral assignment of the

Trust's membership interest in Goodmill. *Id*. at 42.

From late 2006 until October 2010, defendant Halloran & Sage LLP

represented Matthew Durst with respect to his position as a trustee of the Trust. *Id*.

at 42. Defendant Kelley-Galica Peck was an attorney employed by Halloran &

Sage at that time, where she worked on Trust matters. SA 74 (H&S MFSJ Ruling).

On October 4, 2010, Attorney Peck left Halloran & Sage and joined

Defendant Robinson & Cole LLP ("R&C"). *Id*. at 42.  R&C had no dealings with

the Trust, nor with any of the Dursts before that date. *Id*. On or about October 13,

2010, Matthew Durst retained R&C, including Attorney Peck, to represent him in

his capacity as co-trustee of the Trust. *Id*.

A year later, in October 2011, the Jake Ball Trust was the named plaintiff in

an action in the New Jersey Chancery Court concerning the Trust's ten-percent

Goodmill interest.  SA 5 (PSJ Ruling). After a two-day mediation, Matthew Durst

(acting as trustee for the Trust) entered into an agreement with the Goodmill

defendants to settle the action, and the agreement was recorded. *Id*. at 6.  Steven

Durst participated in this mediation, though he has contested the extent of his

involvement.  *Id*. Central to the compromise was the $600,000 agreed-upon value

of a certain building 99%-owned by the Trust located at 1600 W. Hunting Park

Boulevard in Philadelphia.  *Id*.  Shortly thereafter, in response to the Goodmill

-3-

defendants seeking to enforce the settlement, Steven and Rueben Durst filed a motion to personally intervene in the action. *Id*. They claimed, among other things, that Matthew did not have the authority to bind the Trust to the settlement agreement, and that the settlement agreement's terms were disadvantageous. *Id*. at 7-8.

The Chancery Court allowed Steven and Reuben to conduct discovery and stayed the proceedings for four months to permit them adequate time to prepare their claims. *Id*. at 7. In April 2012, the Chancery Court entertained cross-motions to enforce and set aside the parties' settlement agreement (McDonnell, J.S.C presiding). SA 282-88. The Chancery Court enforced the settlement agreement, and denied Steven and Reuben's motion to intervene as therefore moot. *Id*. at 288. The Chancery Court reasoned:

> [T]he proposed intervenors have not shown that the settlement was a bad deal for the Trust. Litigation can be costly and unpredictable. There is no demonstration that the Trust would make out better if the settlement were to be set aside. While the beneficiaries and/or creditor of the Jake Ball Trust are unhappy with the settlement, in the absence of proofs, their unhappiness does not warrant setting aside the settlement.

*Id*. at 287. Thus, the Chancery Court concluded that Steven and Reuben, despite their apparent hindsight frustration with the settlement, had not shown it to have been unfair. *Id*. Steven and Reuben appealed from the court's ruling, but withdrew

that appeal after they were unable to obtain an emergency stay of the order. SA at 9 (PSJ Ruling).

As a result of the dispute over the Chancery Court proceedings, Matthew Durst offered to resign as a co-trustee of the Trust and petitioned the Connecticut Probate Court in November 2011 for approval of his final accounting. SA 43 (R&C MFSJ Ruling). In December 2011, Matthew Durst transferred $35,000 from the Trust to an escrow account at R&C to preserve Trust assets and to cover future legal fees and expenses associated with the accounting. *Id.* At the initial hearing before the Probate Court, Steven Durst objected to the escrow and the Probate Court directed that the escrow account be frozen pending further court order. *Id.* In October 2013, the Probate Court directed that the escrow account be turned over to the Trust, less certain court-approved expenses. *Id.* R&C complied, closing the escrow account and issuing a check to the Trust in the amount of $33,605. *Id.* This action followed.

## B.    PROCEDURAL HISTORY.

Steven and Reuben Durst and the Jake Ball Trust filed this action in New Jersey state court against Matthew Durst in May 2012. SA 43-44 (R&C MFSJ Ruling). They seek injunctive relief and damages for misappropriation of assets, self-dealing, failure to provide annual accountings, and misrepresentation regarding delivery of trust assets. *Id.* at 44. The original complaint sought removal

of Matthew Durst as Trustee, an order restraining Matthew Durst from access to

any and all Trust assets, immediate return of misappropriated funds, compensatory

damages, punitive damages and attorney's fees and costs. *Id.* Following the

dismissal of the Jake Ball Trust as a party, the action was removed to the District

Court for the District of New Jersey. *Id*.

Plaintiffs filed an Amended Complaint in February 2013, adding claims for

legal malpractice against Attorney Peck, Halloran & Sage, and R&C. SA 1228-30

(Am. Compl.).

Also in February, Matthew Durst moved for partial summary judgment

asking that Plaintiffs be collaterally estopped from arguing two discrete issues

before the court: the value of the property located at 1600 W. Hunting Park in

Philadelphia, and the fairness of the settlement agreement approved by the

Chancery Court. SA 3-4 (PSJ Ruling). The District Court granted the motion,

holding that the elements of collateral estoppel had been duly established. *Id*. at 20-

21.

Plaintiffs moved for permission to file a Second Amended Complaint in

June 2013, which motion was denied without prejudice. SA 45 n.2 (R&C MFSJ

Ruling). They again sought leave to amend in order to add a malpractice claim

against Attorney John A. Yacovelle arising out of his involvement in the Chancery

Court proceedings. *Id.* at 45. The Magistrate Judge denied this application as

-6-

meritless in July 2014, concluding that the Court's earlier grant of partial summary judgment resolved that Plaintiffs "cannot allege cognizable, proximately caused damages resulting from Yacovelle's alleged malpractice." *Id.*

R&C moved for summary judgment in November 2014; the motion was granted on January 13, 2015. SA 41 (R&C MFSJ Ruling). The Court reasoned that R&C was not liable for any conduct engaged in by Attorney Peck prior to joining R&C, and further held that Plaintiffs had failed to show that they suffered any damages caused by conduct after Attorney Peck joined the firm in October 2010. *Id*. at 45-46.

Soon thereafter, Plaintiffs filed a third motion for permission to file a Second Amended Complaint, this time seeking to add a claim against an appraiser, Parker Benjamin. SA 872-74. R&C objected to this motion to amend, on the ground that the proposed Second Amended Complaint improperly retained the allegations against R&C which already had been decided in R&C's favor on its recent motion for summary judgment. SA 882 (Br. in Opp.). R&C also submitted an executed Consent Order, signed by Plaintiffs' counsel, indicating both parties' agreement that: (1) the proposed complaint was adding only a claim against Parker Benjamin; (2) Plaintiffs did not intend to ask the Court to open the grant of summary judgment as to R&C; and (3) if permission to file the proposed complaint was granted, all references to R&C would be removed before its filing. SA 1245-46

(Consent Order). During the oral argument on the motion for permission to amend, the Magistrate Judge recognized that R&C was no longer a party and that the Second Amended Complaint would not apply to R&C even if allowed, and pressed Plaintiffs' counsel to concede the point. SA 888, 905-06. Eventually, the motion for permission to amend was denied on its merits, and the allegations against Benjamin were not made a part of the case. SA 870-71.

In August 2015, Plaintiffs filed a Motion for Reconsideration, asking the Court to take up four different rulings which had been made over the previous two years: (1) the grant of partial summary judgment to Matthew Durst; (2) the denial of the Second Motion for Permission to File a Second Amended Complaint; (3) the grant of summary judgment to R&C; and (4) the denial of the Third Motion for Permission to File a Second Amended Complaint. SA 633 (Recon. Ruling). The District Court denied this motion on all grounds in October, holding it both procedurally and substantively deficient. SA 58, 62-65.

Later that month, the remaining two defendants, Halloran & Sage and Attorney Peck, filed motions for summary judgment as to all counts. SA 927, 1063. Halloran & Sage's and Peck's motions were granted by the District Court in November 2015. SA 68-69 (H&S MFSJ Ruling).

Plaintiffs, still then represented by counsel, filed this appeal on December 23, 2015. SA 1. Counsel subsequently withdrew on May 9, 2016, and Plaintiffs, now acting *pro se*, filed their informal brief on May 24, 2016.

# SUMMARY OF THE ARGUMENT

R&C was properly granted summary judgment because it could not be held liable for any conduct engaged in by Attorney Peck prior to joining the firm as a matter of law.  Moreover, Plaintiffs failed to establish the existence of a genuine issue of material fact regarding the damages they allegedly suffered as a result of events which occurred after Attorney Peck joined R&C.  Based on the pleadings and the undisputed evidence, R&C was entitled to judgment in its favor on the Amended Complaint.

The District Court also did not abuse its discretion in denying Plaintiffs' third motion for permission to file a Second Amended Complaint.  The motion was made late in the case, after discovery was nearly complete, based on allegations which had long been known to Plaintiffs. Additionally, even if the District Court had erred in refusing permission, it would be harmless error with regard to R&C because the proposed Second Amended Complaint contained no new allegations against R&C, which had already been granted summary judgment in its favor.

Finally, the District Court properly denied Plaintiffs' "global" motion for reconsideration, which attacked four separate rulings, because the motion was procedurally and substantively lacking.  The District Court's thorough ruling addressed each of Plaintiffs' contentions and correctly rejected each. The District Court did not abuse its discretion in doing so.

# ARGUMENT

## I.     The District Court Appropriately Granted Summary Judgment To R&C.

R& C moved for summary judgment on Plaintiffs' Amended Complaint, raising two discrete claims: (1) the firm could not be held responsible for the acts of Attorney Kelley Galica-Peck before October 4, 2010, when she joined R&C; and (2) assuming *arguendo* that Attorney Peck had committed any negligent act after joining R&C, Plaintiffs had failed to establish that they suffered any damages as a result of that act. SA 46-47 (R&C MFSJ Ruling). The District Court correctly held for R&C on both claims.

In support of its relatively straightforward motion with respect to the limited claims of alleged malpractice asserted against it, R&C submitted exhibits and affidavits, as well as a statement of undisputed facts under Rule 56.1 of the Federal Rules of Civil Procedure.  Although Plaintiffs filed a memorandum of law in opposition to R&C's motion, they did not file the required opposition to R&C's Rule 56.1 statement, or submit their own affirmative statement of undisputed facts.[2]  SA 41 n.1.

---

[2]     However, the District Court affirmed that, despite Plaintiffs' noncompliance with the procedural rules, the Court would still view all evidence in Plaintiffs' favor, and extend to them any reasonable favorable inferences to be drawn from that evidence. SA 46.

In their appeal to this Court, Plaintiffs do not explain their assertion that the District Court erred in granting summary judgment to R&C.  Appellants' Br. at 14-16. Indeed, Plaintiffs do not even address the court's ruling or the bases for its decision; the portion of their brief dedicated to this issue is roughly two pages long and fails to identify any claimed error committed by the District Court. *Id*. The judgment in R&C's favor should be affirmed.

### A.    Applicable Standard of Review.

This Court exercises plenary review when reviewing the grant or denial of summary judgment, and applies the same general legal standards with respect to whether summary judgment was appropriate below. *E.g.*, *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id*. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id*.  The District Court appropriately applied this standard, which now applies with equal force before this Court on appeal. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016);

-12-

*Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246-47 (3d Cir. 2002) (plenary review).

### B.    The District Court Properly Rejected Plaintiffs' Limited Legal Malpractice Claims Against R&C On The Undisputed Facts.

Because R&C cannot be held responsible for any alleged wrong that predates Attorney Peck's having joined R&C and because the limited allegations against R&C are meritless, the District Court appropriately granted R&C summary judgment.

"At the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance."  *McGrogan v. Till*, 167 N.J. 414, 425, 771 A.2d 1187, 1193 (2001). It is the injurious conduct that engenders the cause of action. Under New Jersey law, a plaintiff claiming legal malpractice must plead and prove: (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by plaintiff. *Id*.; *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416, 678 A.2d 1060 (1996).  Based on the undisputed facts, Plaintiffs could not prove *any* of these elements with respect to the acts alleged in its Amended Complaint.

To the extent that Plaintiffs claimed Attorney Peck committed misconduct *prior* to October 4, 2010 – the date she came to work at R&C – R&C could not legally be held responsible for those acts. Second, with respect to those acts which

were alleged to have taken place *after* October 4, 2010, the undisputed evidence revealed that Plaintiffs had not suffered any damages.

> **1. The District Court Properly Held That R&C Was Not Responsible for Attorney Peck's Conduct Before Joining The Firm In October 2010.**

The Amended Complaint is specific in its allegations of the claimed misconduct: paragraphs 39-48 relate to activities which occurred when Attorney Peck was employed by Halloran & Sage, and only paragraphs 49-51 concern supposed acts occurring after Attorney Peck joined R&C. SA 1228-30 (Am. Compl.). The allegations in the Halloran & Sage paragraphs concern events that led up to Steven Durst's conveyance of the ten-percent membership interest in Goodmill LLC to the Trust with which R&C was entirely uninvolved, and for which R&C cannot be held liable. *Id*.

Essentially, Plaintiffs' claim was that Steven Durst would not have agreed to make the Trust irrevocable but for representations made to him. There was no allegation, and no evidence, that Steven Durst had any relationship with R&C at the time this occurred. The events alleged in paragraphs 39-48 all took place in or before December 2007, more than three years before Attorney Peck left Halloran & Sage. SA 462-533 (Kelley Peck Certification & Exhibits).

The same is true of the Amended Complaint's allegations that the promissory note (which was given as part of the conversion) should have been

securitized.  The note and collateral assignment were alleged to have been made in

2007, SA 1228-29 ¶¶ 42-46 (Am. Compl.), long before R&C was introduced to the

dispute.

The District Court agreed with R&C on these points, holding that there was

no evidence whatsoever that R&C had any contact with Plaintiffs during the

operative period in 2007. SA 50-52.  Noting that Plaintiffs had *conceded* that the

acts of negligence they specified in their opposition brief had all occurred prior to

Attorney Peck's employment with R&C, *id*. at 50 n.3, the District Court held that

Plaintiffs had not provided any "factual or legal basis to hold R&C liable for

alleged misconduct with which they had no knowledge or control. Nor is there any

basis to find R&C vicariously liable for [Attorney] Peck's alleged misconduct prior

to joining the firm." *Id*. at 50-51.

The District Court's holding was well supported by applicable precedent and

Plaintiffs have failed to identify any error in its ruling on this point. *Id*. (citing

*Falzarano v. Leo*, 269 N.J. Super. 315, 320, 635 A.2d 547 (App. Div. 1993);

*Malanga v. Mfrs. Cas. Ins. Co.*, 28 N.J. 220, 227, 146 A.2d 105 (1958)); *see also*

*Licette Music Corp. v. Sills, Cummis, Zuckerman, Radin, Tischman, Epstein &*

*Gross, P.A.*, No. A-6595-06T2, 2009 N.J. Super. LEXIS 1861, 2009 WL 2045259,

at *8 (N.J. Super. Ct. App. Div. July 16, 2009) (even where an employee is

actively employed in a firm, if he is not acting within his scope of employment, the firm is not vicariously liable for his acts as a consultant for plaintiff).

> **2.    The District Court Correctly Held That Plaintiffs Did Not Suffer Any Harm As A Result Of The Alleged Misconduct.**

With respect to the claims of negligence *after* Attorney Peck joined the firm in the fall of 2010, R&C sought summary judgment on the ground that – even assuming arguendo Plaintiffs could prove malpractice – they were unable to establish that R&C caused them any financial harm on account of the claimed acts of misconduct.  The District Court agreed, rejecting Plaintiffs' claims. SA 52-53.

> **a.    The Supposed Malpractice Caused Plaintiffs No Financial Loss.**

The District Court noted that, in Plaintiffs' memorandum in opposition to R&C's motion for summary judgment, they identified only one instance of alleged malpractice by R&C after Attorney Peck joined the firm in the fall of 2010. *Id*. Specifically, "Plaintiffs contend that Peck, while employed by R&C, wrongfully directed $35,000 from the Trust to her own account preventing the Trust from meeting its obligations and objectives." *Id*. at 52.  The District Court concluded that, even if true, there was no harm done because "[t]here is no dispute that the Connecticut Probate Court initially ordered that this money be held and later ordered that it be paid to the Trust, less certain approved expenses, and such

payment was made." *Id*. at 53; *see also* SA 462-533 (Peck Certification &

Exhibits). Moreover,

> Plaintiffs have failed to provide any evidence of damages
> proximately caused by Peck's alleged misconduct in
> transferring $35,000 to an escrow account held by R & C. As
> noted above, Plaintiffs admit that consistent with the Probate
> Court's order, the escrow was closed and R & C issued a
> check to the Trust in the amount of $33,605. The $1,395 not
> withheld was expressly approved by the Probate Court.
> Plaintiffs cannot now argue that they were damaged by this
> amount. Furthermore, Plaintiffs offer no support for their
> contention that the Trust was unable to meet its obligations
> while the funds were escrowed.

*Id*. at 53; *see also* SA 462-533 (Peck Certification & Exhibits).

In their brief to this Court, Plaintiffs do not challenge this conclusion.

Appellants' Br. at 1-20. Plaintiffs do not argue that there are genuine disputes of

material fact regarding these issues, nor do they contend that the District Court

misapplied applicable law. Plaintiffs point to no evidence whatsoever that could

support their claim that they suffered financial damage caused by acts engaged in

by R&C. There is no cause for this Court to disturb the District Court's ruling.

*Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005).

### b. The Doctrine Of Collateral Estoppel Bars Plaintiffs From Claiming the Chancery Court Settlement Was Unfair.

Although noting that Plaintiffs had not raised the claim in their brief in

opposition to the motion for summary judgment, the District Court *sua sponte*

-17-

rejected the notion that Plaintiffs had been damaged by the alleged undervaluation of the Trust's property or the subsequent settlement agreement. SA 54-55. The District Court summarily resolved that Plaintiffs were collaterally estopped from claiming they suffered any financial harm as a result of these acts. *Id*.

Briefly stated, the District Court considered its earlier ruling, issued in response to Matthew Durst's 2013 motion for partial summary judgment, SA 2-21 (PSJ Ruling), holding that Plaintiffs had already had an opportunity to establish that the settlement agreement was unfair or inappropriate, and it was in the very action which was settled, in the New Jersey Chancery Court. *Id*. Consistent with that earlier ruling, the District Court held that Plaintiffs were similarly barred from re-litigating the "fairness" of the Chancery Court settlement agreement here, as a part of its claim against R&C. SA 55 n.5 (R&C MFSJ Ruling).

> Because Plaintiffs are precluded from challenging the fairness of the [Chancery] court settlement, Plaintiffs cannot prove in their legal malpractice claim against R & C that they were damaged by R & C's representation during the conveyance of the Millville Asset or the settlement more broadly. Collateral estoppel in this instance prevents the Court from considering Plaintiffs' position but for R & C's alleged negligence. Even if Plaintiffs could establish the breach of a duty owed by R & C in the context of the [Chancery] court settlement and the disposition of the Millville Asset, *Plaintiffs cannot show that they were damaged because the Court must assume that the settlement was fair and equitable*.

*Id*. at 55 (emphasis added). Plaintiffs argue (by extension) that the collateral estoppel holding was erroneous because the doctrine was wrongly invoked and

should never have been applied. Appellants' Br. at 10-12. Plaintiffs' claims lack

merit.

To determine whether collateral estoppel was applicable, the District Court

applied a strict five-prong test enunciated by the New Jersey Supreme Court:

> (1) the issue to be precluded is identical to the issue decided in
> the prior proceeding; (2) the issue was actually litigated in the
> prior proceeding; (3) the court in the prior proceeding issued a
> final judgment on the merits; (4) the determination of the
> issue was essential to the prior judgment; and (5) the party
> against whom the doctrine is asserted was a party to or in
> privity with a party to the earlier proceeding.

SA 12-13 (PSJ Ruling) (citing *First Union Nat'l Bank v. Penn Salem Marina*, 190

N.J. 342, 352, 921 A.2d 417 (2007)).  In their Appellant's brief, Plaintiffs do not

challenge the legal standard applied by the District Court, but instead assert that

the Court incorrectly: (1) deemed the issues at hand in both proceedings identical;

(2) found that the prior proceeding resulted in a merits judgment; and (3) found

that they were parties to the prior proceeding. Appellants' Br. at 10-11.  Each of

these claims is meritless.

Plaintiffs first assert that the issues in the Chancery Court action and in this

action are not identical. *Id*. at 10.  The District Court appropriately held to the

contrary. The District Court found that although the context in which the issue of

fairness was raised was different in the two cases (in the Chancery Court, the

action was one to enforce a settlement, and here it is in a civil cause of action for

-19-

malpractice), the central issues of "the value of the 1600 West Hunting Park property and whether the settlement was a good deal for the Trust" were precisely the same in both actions. *See* SA 14 (PSJ Ruling).  Moreover, the Chancery Court made specific findings that there was *no* evidence that the property had been undervalued, or that the Trust "would make out better if the settlement were to be set aside." *Id*. at 8 (quoting Chancery Court ruling). Based on the entirety of the record, Plaintiffs cannot succeed on their claim that the relevant issues were different in the two actions.

Plaintiffs' second contention on appeal, which was not preserved below,[3] is that the Chancery Court action was not "a judgment on the merits." Appellants' Br. at 10.  Plaintiffs claim that "the issue of Matt [Durst]'s authority has never been adjudicated." *Id*.  Plaintiffs misunderstand the legal significance of this prong. In order for this prong to be satisfied, there must be evidence that the resolution of the issue in the first action was not a preliminary or interlocutory ruling, but was actually a part of a final judgment in the action. *First Union*, 190 N.J. at 354 (default judgment was a final judgment nonetheless).

---

[3]    Plaintiffs did not contest the applicability of this prong in the District Court. SA 10 (PSJ Ruling).  This Court should refuse to review this claim on the ground that Plaintiffs did not preserve it for appeal, since "[a]bsent exceptional circumstances, this Court will not consider issues raised for the first time on appeal." *Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006) (citing *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994)); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261(3d Cir. 2009).

It is beyond dispute that the Chancery Court issued a final judgment upholding the settlement agreement. SA 8-9 (PSJ Ruling) (noting that the Chancery Court granted the motion to enforce the settlement and denied Plaintiffs' motion to intervene as moot). Indeed, an appeal to the New Jersey Appellate Division was filed from this ruling (although later withdrawn), conclusively indicating its finality in Plaintiffs' eyes. *Id*.

Plaintiffs' final challenge is to the last prong of the test, which asks whether the party sought to be estopped was a party (or was in privity to a party) to the first action. Appellants' Br. at 11. In challenging the District Court's holding that they were essentially treated as parties by the Chancery Court, Plaintiffs argue that their motion to intervene as parties was never granted. *Id*. But the District Court had, in fact, duly noted this point, and concluded that the rights and opportunities granted to Plaintiffs by the Chancery Court (including a postponement of the action so Plaintiffs could conduct discovery, full access to the witnesses, and presentment of oral argument to the court) made them "de facto" parties, and that this status satisfied this prong. SA 15 (PSJ Ruling).

> Under New Jersey law, "a judgment may be binding as an estoppel on a person who, although not nominally or formally a party to the action in which it was rendered, submitted his or her interest in the subject matter of the litigation to the consideration of the court and invited its adjudication thereon."

*Id.* at 14 (citing *Ross v. Ross*, 308 N.J. Super. 132, 147, 705 A.2d 784 (App. Div. 1998); *Raynor v. Raynor*, 319 N.J. Super. 591, 603, 726 A.2d 280 (App. Div. 1999)).

### 3.    Plaintiffs' Final Appellate Claim Is Unpreserved.

Plaintiffs claim that the District Court erred in granting R&C summary judgment because the firm and Attorney Peck were actively concealing the state of her knowledge regarding the appraisal performed by Parker Benjamin. Appellants' Br. at 15.  There are two problems with this claim: (1) it was never pleaded, SA 1222-30 (Am. Compl.) SA 39-57 (R&C MFSJ Ruling); and (2) although Plaintiffs attempted to amend their pleadings to add a cause of action against Benjamin individually, that attempt would not have altered the claims raised against R&C even if it had been allowed (which it was not).  *See* SA 56-57 (addressing propriety of denial of motion to amend complaint).

The District Court based its summary judgment analysis on the contents of the Amended Complaint, which was the operative pleading at the time R&C moved for summary judgment.  The issues addressed in the court's ruling were properly limited to the allegations contained in the Amended Complaint. SA 39-57 (R&C MFSJ Ruling). It is too late for Plaintiffs to offer new theories of liability at this late date. *Del. Nation*, 446 F.3d at 416.

### C. The District Court Properly Declined Plaintiffs More Time To Respond To R&C's Motion For Summary Judgment.

#### 1. Applicable Standard of Review.

This court reviews a challenge to the district court's refusal to defer decision on summary judgment as premature for an abuse of discretion. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

#### 2. The District Court Did Not Abuse Its Discretion In Refusing To Defer Ruling On R&C's Motion.

In their memorandum in opposition to R&C's motion for summary judgment, Plaintiffs urged the District Court to defer ruling on the motion until after discovery had been completed.  SA 47  (R&C MFSJ Ruling).  The District Court properly rejected this request as procedurally deficient and lacking merit because, even assuming the veracity of Plaintiffs' allegations, they could not establish damages.  Plaintiffs argued below that the discovery deadline had not yet passed and that R&C's motion seeking summary judgment was therefore premature. *Id*. at 47.  Rule 56(d) of the Federal Rules of Civil Procedure does in fact permit a non-moving party to ask the court to deny or postpone consideration of an opponent's motion for summary judgment, so that the party can complete necessary discovery.  *Id*.  But to do so (under settled precedent of this Court) a party must submit a formal statement – under oath – that complies with a well-established standard. *Id*.

-23-

Specifically, the party must state: (1) what particular information is sought; (2) how the anticipated information would preclude summary judgment; and (3) why the information had not previously been obtained. *Id.* (citing *Pa., Dept. of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012)).

The District Court correctly found that Plaintiffs had not filed such a statement, and nothing in their opposition papers satisfied the applicable standard. *Id*. at 48-49. The District Court properly held that Plaintiffs' "blanket" statements regarding their intent to take discovery were insufficient to carry their burden of showing that they were entitled to more time to respond to R&C's motion, or that any such delay would be likely to produce information which would make a material difference to the outcome of the litigation. *Id*. The District Court acted within its discretion in so ruling. This Court has repeatedly held that vague and general statements about remaining discovery to be conducted are insufficient to satisfy the strictures of Rule 56. *See id.* at 49 (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987)).

Finally, the District Court also noted that, unlike most instances when Rule 56(d) is invoked, Plaintiffs here were not claiming that the "missing" information sought to be obtained through additional discovery was within the protection and control of the party moving for summary judgment (*i.e.*, R&C). *Id*. at 49. To the contrary, "[f]rom what can be gleaned from Plaintiffs' submissions, it appears that

much of the purportedly outstanding discovery, particularly pertaining to damages, is in Plaintiffs' *own* knowledge and control, not in the possession of the defendants." *Id*. (emphasis added). The District Court did not abuse its discretion in refusing to defer ruling on R&C's motion for summary judgment.

## II.    The District Court Did Not Abuse Its Discretion In Denying Plaintiffs' Third Attempt To File A Second Amended Complaint.

### A.    Applicable Standard of Review.

This Court reviews a district court's denial of leave to amend a complaint for an abuse of discretion. *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 863 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985). A district court is afforded broad discretion to deny leave to amend if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). Likewise, the district court may also properly refuse to allow an amendment that fails to state a cause of action. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

### B.    Even If The Second Amended Complaint Had Been Allowed, It Did Not Raise Any New Claims Against R&C And Could Not Have Altered The Judgment Already Entered In Its Favor

With respect to its review of the claims as to R&C, this Court does not have to reach the merits of Plaintiffs' assertion that the trial court should have allowed

the third motion to amend the Amended Complaint. This is so because – even if permission had been granted – it would not have affected Plaintiffs' claims against R&C, which had already been dismissed from the action.

As noted above, Plaintiffs filed their last motion to amend the Complaint *after* R&C had already been granted summary judgment. Thus, R&C was no longer in the case when this Second Amended Complaint was proposed.

In addition, the new proposed Complaint did not contain any new or different allegations against R&C. SA 1232-43 (Proposed Second Am. Compl.). To the contrary, it improperly included all of the old allegations on which R&C had already won summary judgment (hence, R&C asked the Magistrate Judge to obtain an acknowledgement from Plaintiffs' counsel that their intent was *not* to drag R&C back into the fray, a concession that Plaintiffs readily made). SA 888, 905-06; 1244-46 (Consent Order).

Thus, even if the District Court had permitted Plaintiffs to amend the Complaint, it would not have mattered to R&C, since it had already been dismissed from the suit. In other words, even if error to refuse the amendment, the District Court's ruling would have been harmless error as to R&C. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923-24 (3d Cir. 1985) (if an error does not affect a substantial right of the appealing party, it is a harmless error).

**C.    In Any Event, the District Court Did Not Abuse Its Discretion In Denying Plaintiffs Permission To File A Second Amended Complaint.**

The main thrust for Plaintiffs' Third Motion for Permission to File a Second Amended Complaint was to add new allegations not against R&C, but against a new proposed defendant, a real estate appraiser named Parker Benjamin. Benjamin had performed an appraisal of the Trust's property back in 2007, well before Peck joined R&C in October 2010. SA 880 ¶¶ 7-10; 1240-42 ¶¶ 52-68 (Proposed Second Am. Compl.).

The Magistrate Judge heard oral argument on the motion for permission, and queried Plaintiffs' counsel as to the grounds for his motion, especially since there was an order on file that no new amendments would be allowed:

> [A]fter a series of amendments, back in September the Court indicated no other motions to amend without leave – or to join new parties without leave of Court, that's back in September. Now, what happened since September to today? What new information came to light that would support your application that you did not know or under the exercise of reasonable diligence could not have known?

SA 888, 907:3-9.  Counsel conceded that he could not fairly say that it was new information, since "it was information that was available. And as a result of reviewing the file and discussing it with the client, they had asked that we proceed with this application." *Id*. at 907:10-21.

-27-

After hearing argument from the opponents of the motion, the Magistrate Judge held that, despite the liberal rules allowing amendments, the unjustified failure to bring this proposed complaint forward earlier would cause prejudice to the parties and virtually stall the progress of the action which had otherwise been on the brink of completing discovery. *Id*. at 913:7-23.

Plaintiffs provide scant support on appeal to their claim that the Magistrate Judge abused her discretion in rendering this order. Appellants' Br. at 16. Plaintiffs offer only that allowing Benjamin to go "scot-free" was an unjust result. *Id*.

Because they are responsible for shepherding civil actions from commencement to judgment, the district courts and magistrate judges are afforded wide discretion in managing their dockets. *See generally Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment."). In a case such as this, which was approaching trial-ready status, and where Plaintiffs' counsel candidly stated on the record that the action against Benjamin could have been brought sooner and there is no good reason why it was not, this Court would be hard pressed to hold that the Magistrate Judge abused her discretion in denying permission.

-28-

## III.   The District Court Did Not Err In Denying Plaintiffs' Global Motion For Reconsideration.

### A.   Applicable Standard of Review.

This Court reviews the denial of a motion for reconsideration for abuse of discretion. *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

### B.   Plaintiffs' Global Motion For Reconsideration Was Procedurally Deficient and Meritless.

As laid out in the Counter-Statement of the Case, Plaintiffs filed a Motion for Reconsideration in August 2015, which asked the District Court to revisit four discrete rulings:

(1)    the August 2013 ruling granting Matthew Durst partial summary judgment;

(2)    the July 2014 ruling denying Plaintiffs' second motion for permission to file an amended complaint (to add Attorney Yacovelle and his firm as a defendant);

(3)    the January 2015 ruling granting R&C summary judgment; and

(4)    the April 2015 ruling denying Plaintiffs' third motion for permission to file an amended complaint (seeking to add Parker Benjamin as a defendant).

SA 634 (Mot. for Recon).

The District Court denied this motion in its entirety, finding it both procedurally and substantively deficient. SA 59 (Recon. Ruling). The District Court did not abuse its discretion in so holding.

First, as correctly noted by the District Court, the deadline for filing a motion for reconsideration is fourteen days following issuance of the ruling sought to be reconsidered. *Id*. at 62 (citing L. Civ. R. 7.1(i)).  Here, the rulings sought to be reviewed were decided months – indeed, in some cases years – earlier.  *Id*. at 62.  The motion was thus fatally untimely and could have been dismissed on that ground alone. *See, e.g.*, *Mitchell v. Town of Willingboro Mun. Gov't*, 913 F. Supp. 2d 62, 78 (D.N.J. 2012). The District Court nevertheless generously allowed merits review of Plaintiffs' claims.

The District Court set forth the applicable legal standard: "The party seeking reconsideration [of a ruling] bears the heavy burden of demonstrating either: '(1) an intervening change in the controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice.'" SA 63-64 (Recon Ruling) (quoting *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014)). The Court noted that Plaintiffs sought reconsideration based on the second and third prongs. *Id*. at 64.

The District Court first resolved that Plaintiffs had not shown that a clear error of law had been committed: "[a] motion for reconsideration on this ground will succeed only where the movant notes dispositive factual matters . . . which were presented to the court but not considered on the original motion." *Id.* at 65 (citing *Resorts Int'l., Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F. Supp. 826,

831 (D.N.J. 1992)).   Nowhere in their motion or the accompanying certification had Plaintiffs identified such "dispositive factual matters" which had been ignored; the District Court summarily rejected this assertion. *Id*. at 65.

The District Court next rejected Plaintiffs' claims that new facts had been uncovered during discovery which justified a re-examination of the January and April 2005 rulings (numbers 3 and 4, above). *Id*. The District Court correctly held that – even assuming *arguendo* that all of the evidence Plaintiffs discussed was "newly discovered" (a dubious assumption) – most of the claimed new evidence was documents already in *Plaintiffs'* possession well before they commenced this action. *Id*. at 66. The Court appropriately refused to consider these pieces of potential evidence "unavailable or unknown" to Plaintiffs at the time of the challenged rulings. *Id*. (citing *Interfaith Cmty. Org. Inc. v. PPG Indus.*, 702 F. Supp. 2d 295, 317 (D.N.J. 2010) (to obtain reconsideration on the basis of newly discovered evidence, the moving party must present evidence that was unavailable and unknown to him at the time of the original court action)).

Finally, the District Court considered Plaintiffs' proffered deposition excerpts from the testimony of the defendants Matthew Durst and Attorney Kelley Peck. SA 66-67.  Acknowledging that the depositions of these two individuals had been taken after all of the challenged rulings, the District Court held that Plaintiffs had not explained why they waited so long (roughly three years) to depose these

critical parties. *Id*. (citing *Lentz v. Mason*, 32 F. Supp. 2d at 733, 751 (D.N.J. 1999)). Moreover, the cited excerpts proffered by Plaintiffs did not support their claim that this "new" evidence would in any way alter the outcome of any of the four rulings they sought to have reconsidered.  *Id*. at 67. Without such proof, their motion was rendered futile.

As recognized by the District Court, Plaintiffs simply disagreed with the Court's resolution of the four challenged motions: "Plaintiffs merely seek to relitigate the fairness of the state court settlement and argue again that [Attorney] Yacovelle's role necessitates his addition as a defendant, issues already decided in this litigation, because they disagree with their disposition. Reconsideration is not proper on this ground." *Id*. at 64 (citing *Grant v. Revera Health Sys. Inc.*, 2015 U.S. Dist. LEXIS 22286, 2015 WL 794992, at *2 (D.N.J. Feb. 24, 2015)).

The record here reveals that Plaintiffs *could* have provided all of this "newly discovered" evidence earlier in the case had they chosen to do so.  The District Court was acting fully within his discretion in denying Plaintiffs' Motion for Reconsideration, and this Court should uphold that ruling.

## <u>CONCLUSION</u>

For the foregoing reasons, and for those stated in the well-reasoned opinion below, the District Court appropriately granted R&C's motion for summary judgment, and none of the balance of Plaintiffs' appellate claims merit relief. Accordingly, R&C respectfully requests this Court to affirm the judgment below.

Respectfully submitted,

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By: */s/Paul H. Zoubek*
PAUL H. ZOUBEK
PA ID: 36716
NJ ID: 011721986
MICHAEL C. WITSCH
PA ID: 313884
NJ ID: 029842012

Liberty View, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

*Counsel for Defendant-Appellee*
*Robinson & Cole, LLP*

Dated: July 27, 2016.

## CERTIFICATION OF COMPLIANCE WITH RULE 32 TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 33(a)(7)(B) because this brief contains no more than 7,535 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 point.


                                    /s/  Paul H. Zoubek, Esq.
                                    Paul H. Zoubek, Esq.

Dated: July 27, 2016.

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

The undersigned hereby certify that they are members of the Bar of the

United States Court of Appeals for the Third Circuit.

<u>/s/  Paul H. Zoubek, Esq.</u>
Paul H. Zoubek, Esq.


<u>/s/  Michael C. Witsch, Esq.</u>
Michael C. Witsch, Esq.

Dated: July 27, 2016.

## CERTIFICATION OF ELECTRONIC FILING AND VIRUS CHECK

1.     This brief complies with the requirements of Third Circuit Local Rule 31.1(c) because the text of the brief filed electronically through the Court's CM/ECF system is identical to the text of the paper copies filed with the Court.

2.     This brief complies with the requirements of Third Circuit Local Rule 31.1(c) because a virus check of this file was performed using Microsoft Endpoint Protection, and no virus was detected.


/s/  Paul H. Zoubek, Esq.
Paul H. Zoubek, Esq.

Dated: July 27, 2016.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2016, I electronically filed the foregoing using the Court's CM/ECF system, which sent a notification to each counsel of record. Also on this day I served a copy of the same on each of the following *pro se* parties:

Mr. Steven Durst                    Mr. Reuben Durst
23 Oakwood Drive                846 Drewry Street
Medford, NJ, 08055              Atlanta, GA 30306


I also delivered seven copies to the Clerk of Court.


/s/  Paul H. Zoubek, Esq.
Paul H. Zoubek, Esq.

Dated: July 27, 2016.