IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

### C.A. NO. 15-4045

---

REUBEN DURST, Trustee, STEVEN DURST, Individually
and as Trustee,

Plaintiffs-Appellants

v.

MATTHEW DURST, Individually and as Trustee, HALLORAN &
SAGE, LLP, ROBINSON & COLE, LLP, and KELLEY GALICA-PECK,

Defendants-Appellees

---

### BRIEF OF DEFENDANT/APPELLEE MATTHEW DURST

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 1:12-cv-05255
HONORABLE JEROME B. SIMANDLE, U.S.D.J.

**LAW OFFICE JOHN A. YACOVELLE**
8438 Mackall Road
St. Leonard, MD  20685-2478
Telephone:  (410) 586-3344
Attorney for Defendant/Appellee,
Matthew Durst, Individually and
as Trustee

## <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 26.1, defendant/appellee Matthew Durst states that he is an individual, so the corporate disclosure requirement does not apply.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT........................i

TABLE OF AUTHORITIES..........................................iv

JURISDICTION AND VENUE.........................................1

STATEMENT OF THE ISSUES PRESENTED..............................1

STATEMENT OF THE CASE.........................................1

SUMMARY OF THE ARGUMENTS......................................11

LEGAL ARGUMENT...............................................12

   POINT ONE

   THE DISTRICT COURT'S ORDERS OF AUGUST 5, 2013 AND
   NOVEMBER 30, 2015, GRANTING SUMMARY JUDGMENT IN
   FAVOR OF MATTHEW DURST SHOULD BE AFFIRMED IN ALL
   RESPECTS....................................................12

   A. STANDARD OF REVIEW......................................12

   B. THE DISTRICT COURT CORRECTLY APPLIED THE DOCTRINE
      OF COLLATERIAL ESTOPPEL TO BAR ANY AND ALL CLAIMS
      RELATING TO THE FAIRNESS OF THE SETTLEMENT REACHED
      IN THE STATE COURT LITIGATION...........................12

      1. The Issues in the Instant Action and the State
         Court Litigation Are Identical......................14

      2. The Issues in the Instant Case Were Actually
         Litigated in the State Court Litigation............15

      3. The Issues Raised by Plaintiffs Herein Have Been
         Determine by a Final Judgment .....................16

      4. The Determination of the Issues in the
         Underlying Action Were Essential to the
         Superior Court's Judgment..........................16

      5. Plaintiffs Were Parties to the Underlying Action....17

C. THE DISTRICT COURT PROPERLY GRANTED SUMMARY
   JUDGMENT ON THE REMAINING CLAIMS AGAINST MATTHW
   DURST ON NOVEMBER 30, 2015.............................18

POINT TWO

THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION
FOR LEAVE TO ASSERT A LEGAL MALPRACTICE CLAIM AGAINST
MATTHEW DURST'S COUNSEL...................................21

A. STANDARD OF REVIEW....................................21

B. THE DISTRICT COURT CORRECTLY DENIED LEAVE TO ASSERT
   A CLAIM FOR LEGAL MALPRACTICE AGAINST YACOVELLE
   BECAUSE SUCH AN AMENDMENT WAS FUTILE...................22

POINT THREE

THE COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER
DATED OCTOBER 15, 2015, DENYING PLAINTIFF'S UNTIMELY
AND INAPPROPRIATE MOTION FOR RECONSIDERATION..............25

A. STANDARD OF REVIEW....................................25

B. PLAINTIFF'S MOTION FOR RECONSIDERATION WAS UNTIMELY....25

C. PLAINTIFFS FAILED TO DEMONSTRATE MANIFEST
   INJUSTICE WOULD RESULT IF RECONSIDERATION WAS NOT
   GRANTED OR THAT NEW EVIDENCE EXISTED THAT WAS
   PREVIOUSLY UNAVAILABLE.................................26

   1. PLAINTIFFS DID NOT DEMONSTRATE MANIFEST
      INJUSTICE..........................................26

   2. THE DISTRICT COURT CORRECTLY REJECTED
      PLAINTIFFS' CLAIMS THAT RECONSIDERATION WAS
      PROPER BASED ON PREVIOUSLY UNAVAILABLE EVIDENCE.....27

CONCLUSION................................................29

CERTIFICATION OF COMPLIANCE AND SERVICE.......................30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

2175 Lemoine Avenue Corp. v. Finco, Inc.,
   640 A.2d 346 (N.J. Super. Ct. App. Div. 1994) ...............22

Allesandra v. Gross,
   187 N.J. Super. 96 (App. Div. 1982) ........................15

Barker v. Brinegar,
   346 N.J. Super. 558 (App. Div. 2002) .......................13

Conklin v. Hannoch Weisman,
   145 N.J. 395 (1996) ........................................22

Cureton v. NCAA,
   252 F.3d 267 (3d Cir. 2001) ................................22

F.G. v. MacDonell,
   696 A.2d 697 (N.J. 1997) ...................................18

Greenleaf v. Garlock, Inc.,
   174 F.3d 352 (3d Cir. 1999) ................................13

Gregory Marketing Mktg. Corp. v. Wakefern Food Corp.,
   207 N.J. Super. 607 (Law Div. 1985) ........................16

Grunwald v. Bronkesh,
   131 N.J. 483 (1993) ........................................22

Hennessy v. Winslow Twp.,
   183 N.J. 593 (2005) ........................................17

In re Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir. 1997) ...............................22

In re Dawson,
   136 N.J. 1 (1994) ..........................................14

Interfaith Community Org., Inc. v. PPG Indus.,
   702 F. Supp. 2d 295 (D.N.J. 2010) ......................27, 28

Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros,
   176 F.3d 669 (3d Cir. 1999) ................................25

MBIA Ins. Corp. v. Royal Indem. Co.,
   426 F.3d 204 (3d Cir. 2005) ................................12

iv

North River Ins. Co. v. CIGNA Reinsurance Co.,
    52 F.3d 1194 (3d Cir. 1995) ................................25

Olson v. General Elec. Astrospace,
    101 F.3d 947 (3d Cir. 1996) ...............................12

Panniel v. Diaz,
    376 N.J. Super. 597 (Law Div. 2004) .......................13

Ross v. Ross,
    308 N.J. Super. 132 (App. Div. 1998) ......................17

Smith v. Nat'l Collegiate Athletic Ass'n,
    139 F.3d 180 (3d Cir.1998), rev'd on other grounds, 525
    U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999) ...........21

Sommers v. McKinley,
    287 N.J. Super. 1 (App. Div. 1996) ........................22

State v. Gonzalez,
    75 N.J. 181 (1977) ........................................13

Thomas v. Cumberland Cty.,
    749 F.3d 217 (3d Cir. 2014) ...............................12

Vort v. Hollander,
    607 A.2d 1339 (N.J. Super. Ct. App. Div. 1992) ............23

Washington v. Gould,
    39 N.J. 527 (1986) ........................................17

Woodrick v. Burke Real Estate,
    306 N.J. Super. 61 (App. Div.), certif. granted, 153 N.J.
    214 (1997) ................................................13

**STATUTES**

28 U.S.C. § 1332............................................1

28 U.S.C. § 1391............................................1

**RULES**

Civ. R. 7.1(i)............................................25

Civil Rule 7.1(i)........................................27

Fed. R. App. P. 32(a)(5)..................................30

v

Fed. R. App. P. 32(a)(6)........................................30

Fed. R. App. P. 33(a)(7)(B)....................................30

Fed. R. Civ. P. 12(b)(6).......................................22

Fed.R.Civ.P. 15(a)(2)..........................................21

Fed. R. Civ. P. 56(a)..........................................12

Local Rule 31.1(c).............................................30

**OTHER AUTHORITIES**

Restatement (Second) of Judgments, § 13 (1982)................16

Restatement (Second) of Torts, § 874 (1979)..................18

Restatement (Second) of Trusts, §§ 170, 174 (1959)...........18

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Venue lies in the District of New Jersey pursuant to 28 U.S.C. § 1391 because the causes of action arose therein. Plaintiffs/appellants Reuben Durst, Trustee, and Steven Durst, individually and as Trustee (collectively, "Plaintiffs"), filed their Notice of Appeal on December 23, 2015.

### STATEMENT OF THE ISSUES PRESENTED

The issues presented as relating to defendant/appellee Matthew Durst are as follows:

1. Did the District Court err in granting summary judgment in favor of Matthew Durst by two separate orders dated August 5, 2013, and November 30, 2015?

2. Did the District Court abuse its discretion in denying Plaintiff's motion for leave to amend their complaint to assert a claim for legal malpractice against Matthew Durst's counsel, John Yacovelle, Esq.?

3. Did the District Court err in denying Plaintiffs' motion for reconsideration of various orders on October 15, 2015?

### STATEMENT OF THE CASE

Steven Durst ("Steven") established a revocable *inter vivos* trust ("Trust") on November 29, 2004, for his benefit as well as

the benefit of his children and nieces and nephews. (Sa936a, Par. 2; Sa938, Par. 18.)[1]  The Trust was created by the "The Jake Ball Trust Agreement," which named Steven's brothers, Reuben and Matthew Durst, as Co-Trustees. (Id. at ¶2.)  Steven retained the ability to direct investments and distributions from the Trust. (Sa947.)

On November 15, 2005, Steven signed an Operating Agreement for a limited liability company named "Goodmill, LLC." (Sa492) Goodmill, LLC was formed to develop and operate a large shopping center in Millville, New Jersey. (Sa473-474.)  Steven was not a member of Goodmill, LLC.  Instead, Steven elected to have his brother, Matthew, as Trustee of the Jake Ball Trust, serve as the member for an interest in the venture. (Id.)  The Operating Agreement granted "The Jake Ball Trust Agreement" a 10% member interest in Goodmill, LLC (the "Millville Asset"). (Sa493.)

Steven signed his brother Matthew's name on the Operating Agreement, which identified Matthew as "Trustee under the Jake Ball Trust Agreement." (Sa961, at T48:23 through 49:2; Sa492, at 23.)  Steven Durst did not read the Operating Agreement before he signed it:

    Q:  Did you read this agreement before you signed it
        with Matt's name?
    A:  Not really.  I might have given it a once-over.
        Doubtful, though.  I mean, did I digest it?

---

[1] Matthew Durst will refer to the Joint Supplemental Appendix filed herewith as "Sa".

          Obviously, as you know, that's been a bone of
          contention.

Q:  Well, I'm asking you.  You're the one that's
      under oath.  I'm asking you if you read it.
A:  My answer is no.

Q:  No?  You did not read it?
A:  No.

[Sa961, at T49:10 through -19.]

Section 7.01 of the Operating Agreement sets forth restrictions on the transfer of any member's interest in Goodmill, LLC.  (Sa483, at 14.)  Section 7.01(a) precludes the sale, assignment and/or transfer of any member's interest to anyone other than a permitted transferee without the prior written consent of the Manager, Bruce Goodman ("Goodman"), who was Steven's boss at the time.  (Id.)  Section 7.04, entitled "Buy Out in the Event of a Termination of Employment," states that in the event Steven ceases to be employed by Goodman, Goodman may buy out the Trust's 10% interest in Goodmill, LLC pursuant to a formula.  (Sa487.)  Plaintiffs have alleged that this provision "could effectively destroy the value of the Millville Asset."  (Sa965, at Par. 42.)  Section 10.01 of the Operating Agreement governs amendments.  It states, "No modification or amendment of this Agreement shall be binding unless such amendment is approved in writing by all of the Members."  (Sa489, at 20 (emphasis added).)

In late 2006, Matthew retained Kelley Galica-Peck, Esq., and her law firm, Halloran & Sage ("H&S"), to represent him as Trustee of the Trust. (Sa463, at Par. 5.) On December 29, 2006, Reuben Durst executed a written document authorizing Matthew Durst, his Co-Trustee, "to perform all ministerial tasks associated with the investment and management of the Jake Ball Trust[.]" (Plaintiffs' Appendix, Exh. 2.) Matthew handled all investments and the "day-to-day" business of the Trust. Reuben wanted no Trust duties assigned to him and prior to October 4, 2011, did nothing other than sign the signature sheets on certain documents from time to time even though he "couldn't care less" what the documents said.

The Jake Ball Trust Agreement was amended and restated on May 10, 2007 ("First Amendment and Restatement"). (Sa936, at Par. 2.) Steven then decided that he wanted to convert the Trust to an irrevocable Trust. (Sa970, at T159:15 through 160:2.) In connection with the conversion of the Trust, Peck recommended that the Trust retain an appraiser to value the Millville Asset. (Sa983, at T36:20 through 37:15.) The Trust, through Peck, retained Paul Ruby from the firm of Parker Benjamin to conduct a valuation of the Millville Asset on behalf of the Trust (the "Ruby Appraisal"). (Id.) Steven Durst was aware that Parker Benjamin was performing an appraisal of the Millville Asset by November of 2007. (Sa1054.)

4

The Trust was amended and converted to an irrevocable Trust by execution of a "Second Amendment and Restatement dated December 24, 2007, of the Jake Ball Trust Agreement dated November 29, 2004." ("Second Amendment and Restatement"). (Sa233.) The Second Amendment and Restatement names Reuben and Matthew Durst as the Trustees of the Trust and names Steven Durst as "Grantor" of the Trust. (Id. at 1.) Reuben Durst testified at his deposition that Steven was the "money person" who provided funds to the Trust and that he (Reuben) had no knowledge of Steven ever being a Trustee of the Trust. (Sa990, at T47:25 through 48:23; T49:7 through -14.) Steven Durst signed the Second Amendment and Restatement but did not read it before doing so, a voluntary decision he made with the understanding that it would become a binding legal document. (Sa968, at T124:2 through -19.)

Article I of the Second Amendment and Restatement, which is entitled, "Declaration of Irrevocability," states in part:

> I understand the difference between a revocable trust and an irrevocable trust, and I hereby declare that, as of the date of execution of this instrument, this trust and the estates hereby created to be irrevocable. I irrevocably relinquish any and all rights to alter, amend or revoke this Agreement.

[Sa236, at 2.]

Article VIII governs the appointment of Trustees and states, in pertinent part, that "[a]ny Trustee is authorized to

appoint an additional Trustee or Trustee or a successor Trustee or a succession of successor Trustees to act in the event of any vacancy in his or her office." (Id. at 9.) Furthermore, Article IX of the Second Amendment and Restatement, which is entitled, "Trustee Powers," permits the trustees to enter into an agreement to sell any property held by the Trust and to compromise and settle all claims by or against the Trust. (Id. at 12-13.)

Article X(J) of the Second Amendment and Restatement, which is entitled, "Trust Accountings," states in part:

> The Trustees **may** provide to me, or my guardian or conservator if I am incapacitated, or, after my death, to each eligible income beneficiary and presumptive remainderman (or the parent or legal representative of any such individual who is a minor or is incapacitated), statements of trust transactions at such time and in such form as the Trustees consider advisable.

[Id. at 19 (emphasis added).]

The terms of the conversion of the Trust to an irrevocable Trust were set forth in a written agreement dated December 21, 2007, between Steven, Matthew and Reuben Durst (the "Conversion Agreement"). (Plaintiff's Appendix, Exhibit 15) Steven Durst signed the Conversion Agreement but did not read it before doing so. (Sa974, at T220:9 through -12.) Under the Conversion Agreement, the Trust agreed to convey a promissory note (the "Note") to Steven in the amount of $500,000. (Plaintiffs'

appendix, Exh. 15, at 1.2.)  The Note in favor of Steven was secured by a collateral assignment of the Trust's 10% membership interest in Goodmill, LLC.  (Id. at Section 1.3.)

After the Trust was amended, Steven approved the use of Trust funds for tuition and expenses in connection with Matthew Durst, Jr.'s college education.  (Sa1069.)  This amounted to $79,553.22, a figure approved by the Connecticut Probate Court and not appealed by Steven Durst in a subsequent proceeding brought in that jurisdiction by Matthew for a final accounting. (Id.)  Once the final accounting was approved by the Probate Court, the only item appealed by Steven Durst was the court's determination that Steven personally owed certain legal fees to the Pennsylvania law firm of Elliot Greenleaf.  (Sa1072-1073.)

On or about May 31, 2010, Steven Durst was terminated by his boss, Bruce Goodman.  (Sa999, at Par. 16.)  Following the termination, Goodman advised that he was exercising his option to "buy out" the Trust's 10% interest in Goodmill, LLC.  (Id. at Par. 18.)  Matthew Durst, as Trustee for the Trust, commenced litigation through separate counsel in the Superior Court of New Jersey in an attempt to have Section 7.04 of the Goodmill, LLC Operating Agreement declared void and unenforceable (the "State Court Litigation").  (Sa1001.)  When Peck left H&S on or about October 4, 2010, and joined the law firm of Robinson & Cole, LLP

("R&C"), Matthew Durst transferred his matter at H&S to R&C. (Sa465, at Par. 14.)

The State Court Litigation was settled on October 4, 2011. (Sa6, at Par. 4.) As part of the settlement, the Trust conveyed its 10% interest in Goodmill, LLC, to Bruce Goodman. (Sa939, Par. 22.) Goodman took the Trust's 10% interest in Goodmill, LLC with full knowledge of the collateral assignment in favor of Steven Durst and with knowledge that Steven would have the right to try and take it back. (Sa204-209, at T16:24 through 17:6; 26:23 through 27:4.) Steven Durst never made any claim against the collateral interest conveyed to Goodman as part of the settlement of the State Court Litigation. (Sa972, at T210:16-24.)

Plaintiffs filed the instant lawsuit in the Superior Court of New Jersey, where it was then removed to the District of New Jersey on August 21, 2012. Matthew subsequently moved for summary judgment. On August 5, 2013, the District Court granted partial summary judgment in favor of Matthew and held that "collateral estoppel applies to bar relitigation of the fairness of the settlement" of the State Court Litigation in 2011. (Sa21.) Subsequent to that ruling, plaintiffs moved for leave to assert a legal malpractice claim against John Yacovelle, Esq., counsel for Matthew Durst. In considering the viability of that claim, Magistrate Judge Donio concluded that plaintiffs

8

were unable to prove damages stemming from the 2011 settlement because "[t]he District Court's August 5, 2013 Order bars relitigation into the 'fairness' of the state court settlement." (Sa36.)

The District Court subsequently granted summary judgment in favor of co-defendant R&C. (Sa39.) The Court held:

> Because Plaintiffs were precluded from challenging the fairness of the state court settlement, Plaintiffs cannot prove in their legal malpractice claim against R&C that they were damaged by R&C's representation during the conveyance of the Millville Asset or the settlement more broadly. Collateral estoppel in this instance prevents the court from considering Plaintiffs' position but for R&C's alleged negligence. Even if Plaintiffs could establish the breach of a duty owed by R&C in the context of the state court settlement and the disposition of the Millville Asset, Plaintiffs cannot show that they were damaged because the court must assume that this settlement was fair and equitable.

[Sa56-57 (emphasis added).]

On April 10, 2015, the Magistrate Judge denied Plaintiffs' motion to add Parker Benjamin as a defendant. Plaintiffs did not appeal from the denial of that motion. Instead, they waited nearly four months and then moved to reconsider the denial of that motion. (Sa633.) In their untimely motion, Plaintiffs also moved to reconsider the Magistrate Judge's order dated July 25, 2014, denying their previous motion for leave to amend their complaint to assert claims against Matthew Durst's counsel as

9

well as the District Court's orders dated August 5, 2013, and
January 13, 2015, granting summary judgment in favor of Matthew
Durst and Robinson & Cole, respectively. (Id.) The District
Court denied Plaintiffs' motion by order dated October 15, 2015.
(Sa56-57).

Matthew moved for summary judgment on August 15, 2015,
seeking dismissal of the remaining claims against him. The
District Court granted summary judgment in favor of Matthew by
order dated November 30, 2015. (Sa69.) The District Court
found that the payments made on behalf of Matthew, Jr. were
within the express terms of the Trust and fully contemplated by
Steven. (Sa91.) The Court also found that Matthew did not make
disproportionate Trust payments to his son. (Id.) The Court
also rejected Plaintiffs' claim that Matthew "mismanaged" the
State Court litigation in light of its prior ruling granting
Matthew summary judgment. (Sa93-94.) The Court also dismissed
Plaintiffs' claims that Matthew failed to provide accurate
accountings or that he wrongfully diverted funds to the trust
account at R&C. (Sa95.)

## SUMMARY OF THE ARGUMENTS

The District Court correctly granted partial summary judgment in favor of Matthew Durst by Order dated August 5, 2013. In reaching its decision, the District Court properly applied the Doctrine of Collateral Estoppel to bar any and all claims that the settlement of the State Court litigation was unfair to the Trust or that the settlement undervalued certain trust property located in Pennsylvania. The District Court also properly granted summary judgment on the remaining claims against Matthew on November 30, 2015, finding that there were no genuine issues of material fact with regard to Plaintiffs' claims that Matthew engaged in self-dealing and misappropriation of trust assets, mismanaged the State Court litigation, failed to provide annual accountings, and/or otherwise wrongfully diverted funds. Finally, the District Court did not abuse its discretion in denying Plaintiffs' motion for leave to assert a legal malpractice claim against Matthew's counsel, John A. Yacovelle, Esq., in order to abuse its discretion in denying Plaintiffs' motion for reconsideration by Order dated October 15, 2015.

**LEGAL ARGUMENT**

**POINT ONE**

**THE DISTRICT COURT'S ORDERS OF AUGUST 5, 2013, AND NOVEMBER 30, 2015, GRANTING SUMMARY JUDGMENT IN FAVOR OF MATTHEW DURST SHOULD BE AFFIRMED IN ALL RESPECTS.**

**A.    STANDARD OF REVIEW.**

This Court's review of the District Court's grant of summary judgment in favor of Matthew Durst is plenary, and it should apply the same test as the District Court applied in considering the motions below. Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). When deciding a motion for summary judgment, "[a]ll reasonable inferences from the record must be drawn in favor of the nonmoving party" and the court "may not weigh the evidence or assess credibility." MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir. 2005).

**B.    THE DISTRICT COURT CORRECTLY APPLIED THE DOCTRINE OF COLLATERAL ESTOPPEL TO BAR ANY AND ALL CLAIMS RELATING TO THE FAIRNESS OF THE SETTLEMENT REACHED IN THE STATE COURT LITIGATION.**

The District Court held that collateral estoppel barred any and all claims in this case relating to the fairness of the

settlement reached in October 2011 in the State Court litigation. The doctrine of collateral estoppel refers to "that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186 (1977). In determining whether collateral estoppel applies in a given matter, federal courts look to the law of the forum state. Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999).

The doctrine of collateral estoppel "is an equitable doctrine designed to 'promote efficient justice by avoiding the relitigation of matters which have been fully and fairly litigated and fully and fairly disposed of.'" Panniel v. Diaz, 376 N.J. Super. 597, 608 (Law Div. 2004) (quoting Barker v. Brinegar, 346 N.J. Super. 558, 566 (App. Div. 2002)). "Collateral estoppel extends to questions of fact, mixed questions of fact and law and, where injustice would otherwise result, to questions of law." Woodrick v. Burke Real Estate, 306 N.J. Super. 61, 79 (App. Div.), certif. granted, 153 N.J. 214 (1997) (quoting Gonzalez, supra, 75 N.J. at 187). In order to successfully invoke collateral estoppel to preclude litigation of a specific issue, a party must establish that:

13

> 1) the issue upon which preclusion is sought
> is identical to the issue involved in the
> prior action;
>
> 2) the issue was actually litigated in the
> prior action;
>
> 3) the issue had been determined by a valid
> and final judgment;
>
> 4) the determination of the issue was
> essential to the prior judgment; and
>
> 5) the party against who preclusion is
> asserted was a party to or in privity with
> a party to the earlier proceeding.
>
> [In re Dawson, 136 N.J. 1, 20-21 (1994).]

Under the circumstances of this case, Plaintiffs attempt to re-litigate the fairness of the settlement reached by Matthew in the State Court Litigation is precluded by the doctrine of collateral estoppel.

## 1.  **The Issues in the Instant Action and the State Court Litigation Are Identical**

One of the central claims against Matthew in this case is that he "mismanaged" the State Court litigation and entered into an unfair settlement to the detriment of the Trust. Plaintiffs asserted that the settlement of the State Court litigation was ill advised and involved ridiculously disproportionate consideration. That is precisely what Steven Durst claimed in the State Court litigation when he challenged the settlement, an effort that was rejected by the trial court. Consequently, whether the settlement was fair and reasonable and the question

14

of the value of trust property that was exchanged as part of the settlement are simply transparent attempts to re-litigate those matters in the instant case.    Indeed, Plaintiffs Amended Complaint includes several allegations regarding the value of the 1600 West Hunting Park property and whether the settlement was a good deal for the Trust.    These issues are identical to the issues before the Superior Court and were exhaustively litigated in that forum.    Therefore, the District Court correctly found that the issues in dispute are identical for purposes of application of the Doctrine of Collateral Estoppel.

## 2.    The Issues in the Instant Case Were Actually Litigated in the State Court Litigation

Second, the issue whether the settlement reached in the State Court litigation was "fair" and not ill advised or lacking consideration was "actually litigated" in the Superior Court of New Jersey because it was "properly raised, by the pleadings or otherwise, submitted for determination, and determined." Allesandra v. Gross, 187 N.J. Super. 96, 104 (App. Div. 1982). Steven Durst specifically argued that Matthew was not authorized to enter into the settlement of the State Court litigation and that such was detrimental to the Trust and its beneficiaries. However, the trial court rejected these claims and enforced the settlement.    Therefore, the central issues of whether Matthew was authorized to enter into the settlement and whether it was

fair were "already litigated" for purposes of collateral estoppel.

### 3. The Issues Raised by Plaintiffs Herein Have Been Determined by a Final Judgment

Third, the question regarding Matthew's authority to the settlement is final for purposes of issue preclusion, as is the question whether the settlement was fair. The trial court entered judgment on August 5, 2013. Those findings and judgments must be afforded conclusive effect. Restatement (Second) of Judgments, §13 (1982) ("For purposes of issue preclusion … 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently affirmed to be accorded conclusive effect.").

### 4. The Determination of the Issues in the Underlying Action Were Essential to the Superior Court's Judgment

Fourth, the issues of authority and fairness were essential to the Superior Court's ruling. A determination in the prior proceeding is "essential" when "the issue was actually recognized by the parties as important and by the trier as necessary." Gregory Marketing Mktg. Corp. v. Wakefern Food Corp., 207 N.J. Super. 607, 622 (Law Div. 1985). It is well settled that "where a judgment of a court of competent jurisdiction directly determines a right, question or fact distinctly put in issue, such judgment estops the parties or their privies from thereafter re-litigating the same issue in a

subsequent proceeding between them, regardless of its nature or forum." Washington v. Gould, 39 N.J. 527, 533 (1986). Steven and Reuben Durst argued that the settlement was invalid and that the West Hunting Park property was undervalued. The Court rejected their arguments and enforced the settlement. Thus, the trial court's finding that the settlement was knowing and voluntary is "essential" to the final ruling by the trial court enforcing the settlement and it is "essential" to the Plaintiffs' claims of breach of fiduciary duty in this action.

### 5.  Plaintiffs Were Parties to the Underlying Action

Finally, it must be established that "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." Hennessy v. Winslow Twp., 183 N.J. 593, 599 (2005). Plaintiffs, while not named parties to the State Court Litigation, appeared before the Superior Court, submitted exhibits, and made arguments. Even though their motion to intervene was denied, Plaintiffs fully participated in the underlying action and were de facto intervenors. Accordingly, they were "parties" for purposes of collateral estoppel. See, e.g., Ross v. Ross, 308 N.J. Super. 132, 147 (App. Div. 1998)(holding that court's judgment would be binding on non-party who submitted brief and argued merits of case). Therefore, the District Court correctly concluded that Steven and Reuben Durst were parties to the State Court

17

Litigation and that this was sufficient for purposes of application of the collateral estoppel.

For these reasons, the District Court's August 5, 2013, order should be affirmed.

**C.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON THE REMAINING CLAIMS AGAINST MATTHEW DURST ON NOVEMBER 30, 2015.**

Following the grant of partial summary judgment in favor of Matthew Durst on August 5, 2013, the remaining claims against Matthew sounded in misappropriate of assets, self-dealing, failure to provide accountings, and misrepresentation regarding delivery of trust assets. Under New Jersey law, "a fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. F.G. v. MacDonell, 696 A.2d 697, 704 (N.J. 1997). A fiduciary's obligations to another include "a duty of loyalty and a duty to exercise reasonable skill and care." Id. (citing Restatement (Second) of Trusts, §§170, 174 (1959)). A fiduciary will be liable for harm resulting from a breach of his or her duties imposed by the extent of such a relationship. Id. (citing Restatement (Second) of Torts, §874 (1979)).

Plaintiffs failed to present any evidence sufficient to create a genuine issue of material fact with regard to the allegation that Matthew breached his fiduciary duties and/or

18

misappropriated the trust funds. First, the Second Amendment and Restatement of the Trust empowers Matthew to make distributions for "education, maintenance and health and reasonable comfort, or support in the accustomed manner of living." In addition, Steven conceded that he was "fine" with the Trust covering up to $30,000 a year for Matthew, Jr.'s education. (Sa1076.) Therefore, the District Court correctly found that the challenged payments for Matthew's education and related expenses were within the express terms of the Trust and fully contemplated by Steven and Matthew Durst. (Sa91.) Further, the District Court correctly found that Plaintiffs provided no evidence that the money spent on Matthew, Jr. in any way prejudiced the priority beneficiaries identified in the Complaint and that there was no genuine issue with regard to the reimbursement of legitimate trust-related expenses. (Sa91-92.)

Second, the District Court correctly concluded that Plaintiffs' claim that Matthew "mismanaged" the State Court litigation was barred as a matter of law because Plaintiffs are precluded from proving damages in connection with the settlement of the State Court litigation. (Sa93-94.) As the District Court found, even if Matthew could not unilaterally bind the Trust to the settlement, the Trust was not damaged as a matter of law by the underlying settlement. Therefore, there is no

genuine issue of material fact regarding Matthew's "management" of the State Court litigation.

Third, the terms of the Trust never required annual accountings. Moreover, Steven Durst never requested an accounting of the trustees between 2004, when the Trust was formed, and 2010. (Sa1072.) Therefore, the District Court was correct in granting summary judgment as to Plaintiffs' claims regarding annual accountings.

Finally, there was no genuine issue of material fact with regard to the alleged wrongful diversion of $35,000 from the Trust account to an escrow account held by R&C. The Court concluded that Plaintiffs are unable to prove damages proximately caused by such transfer and there was no evidence to show that the Trust was unable to meet any of its obligations while the funds were held in escrow. (Sa94.) Therefore, the District Court properly held that summary judgment was appropriate as to Plaintiffs' claim based on the alleged improper transfer of $35,000 to R&C's trust account.

For all of these reasons, the District Court's Order dated November 30, 2015, granting summary judgment to Matthew Durst should be affirmed.

**POINT TWO**

**THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION FOR LEAVE TO ASSERT A LEGAL MALPRACTICE CLAIM AGAINST MATTHEW DURST'S COUNSEL.**

Plaintiffs appeal from the District Court's order of July 25, 2014, denying their motion for leave to assert a legal malpractice claim against Matthew Durst's attorney, John Yacovelle, Esq. Specifically, Plaintiffs sought leave to file a Second Amended Complaint arising out of Yacovelle's alleged "acts of malpractice and breach of [his] fiduciary obligation" to the Jake Ball Trust in connection with his representation in the State Court Litigation. The District Court denied Plaintiffs' application, finding that the proposed amendment was futile. For the following reasons, the District Court did not abuse its discretion in denying Plaintiffs' motion for leave to file an amended complaint.

**A.    STANDARD OF REVIEW.**

Under Fed.R.Civ.P. 15(a)(2), a party may amend its pleading with the court's leave, and "[t]he court should freely give leave when justice so requires." The decision whether to grant leave to amend rests within the sound discretion of the district court. _Smith v. Nat'l Collegiate Athletic Ass'n_, 139 F.3d 180, 190 (3d Cir.1998), _rev'd on other grounds_, 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999). A motion for leave to amend may be denied within the court's discretion as futile where the

proposed amended complaint would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).   In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).   This Court should review the District Court's denial of leave to amend for an abuse of discretion.   Cureton v. NCAA, 252 F.3d 267, 272 (3d Cir. 2001).

**B.   THE DISTRICT COURT CORRECTLY DENIED LEAVE TO ASSERT A CLAIM FOR LEGAL MALPRACTICE AGAINST YACOVELLE BECAUSE SUCH AN AMENDMENT WAS FUTILE.**

In New Jersey, the elements of a legal malpractice cause of action are: 1) an attorney-client relationship creating a duty of care upon the attorney; 2) the breach of such duty; 3) proximate causation of damages sustained; and 4) actual damages. Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996); Sommers v. McKinley, 287 N.J. Super. 1, 9-10 (App. Div. 1996).   An action for legal malpractice "derives from the tort of negligence." Grunwald v. Bronkesh, 131 N.J. 483, 492 (1993).   Legal malpractice occurs when an attorney's breach of professional duty proximately causes a plaintiff's damages.   Id.   In order to prevail in a legal malpractice case, a plaintiff to prove that an attorney's negligence proximately caused a loss.   2175 Lemoine Avenue Corp. v. Finco, Inc., 640 A.2d 346, 352 (N.J. Super. Ct. App. Div. 1994).   Even where an attorney's breach of duty is obvious, there can be no recovery absent a categorical showing that damages resulted from the professional's

22

negligence.  Vort v. Hollander, 607 A.2d 1339, 1341 (N.J. Super.
Ct. App. Div. 1992).

The District Court correctly concluded that Plaintiffs'
proposed amendment to implead Yacovelle was futile because the
District Court's August 5, 2013, ruling regarding the settlement
of the State Court Litigation prohibits Plaintiffs from
contesting the fairness of the state court settlement, which by
definition prevents them from claiming that Yacovelle's alleged
malpractice led to damages in the form of an inadequate and/or
unfair settlement.  In its ruling, the Court expressly noted the
District Court's finding that "collateral estoppel applies to
bar re-litigation of the fairness of the settlement" in the
State Court Litigation.  (Sa34.)

The Court properly presumed the fairness of the underlying
settlement and held that Plaintiffs cannot demonstrate that they
would have obtained a different result had Yacovelle not
committed alleged acts of malpractice in negotiating and
agreeing to the state court settlement.  (Sa36-37.)  By virtue
of the District Court's grant of partial summary judgment,
Plaintiffs were prohibited from claiming that the manner and
outcome of Yacovelle's handling of the State Court Litigation
and, specifically, the settlement somehow harmed the Trust's
assets.  The District Court's holding was factually and legally
sound and therefore not an abuse of discretion.  Therefore, the

Court's denial of Plaintiffs' motion for leave to amend should be affirmed.

<u>**POINT THREE**</u>

<u>**THE COURT SHOULD AFFIRM THE DISTRICT COURT'S**</u>
<u>**ORDER  DATED  OCTOBER  15,  2015,  DENYING**</u>
<u>**PLAINTIFFS'  UNTIMELY  AND  INAPPROPRIATE**</u>
<u>**MOTION FOR RECONSIDERATION.**</u>

Plaintiffs have also appealed from the District Court's October 15, 2015, order denying their motion for reconsideration. As set forth below, the District Court's October 15, 2015, order denying Plaintiffs' motion for reconsideration should be affirmed.

**A.    <u>STANDARD OF REVIEW.</u>**

The denial of a motion for reconsideration is reviewed for an abuse of discretion. <u>Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 673 (3d Cir. 1999). A motion for reconsideration shall only be granted if the moving party shows: "(1) an intervening change in the controlling law; (2) the existence of new evidence that was previously unavailable; or (3) the need to correct a clear error of law or to prevent manifest injustice." <u>North River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995).

**B.    <u>PLAINTIFFS' MOTION FOR RECONSIDERATION WAS UNTIMELY.</u>**

Motions for reconsideration must be filed within 14 days after entry of the order that is the subject of the motion. L. Civ. R. 7.1(i). Here, the orders in question were dated August 5, 2013, July 25, 2014, January 13, 2015, and April 10, 2015,

25

respectively.  Plaintiffs' application was filed woefully out of time.    Therefore,  the  District  Court  correctly  denied reconsideration.

**C.**   **PLAINTIFFS  FAILED  TO  DEMONSTRATE  MANIFEST  INJUSTICE  WOULD RESULT  IF  RECONSIDERATION  WAS  NOT  GRANTED  OR  THAT  NEW EVIDENCE EXISTED THAT WAS PREVIOUSLY UNAVAILABLE.**

Plaintiffs argued that: denial of theie motion would result in  manifest  injustice  and  (2)  that  additional  information secured  during  recent  discovery  disclosed  specific  new  facts that  justify  the  relief  sought.    The  District  Court  properly rejected these arguments.

**1.**   **PLAINTIFFS DID NOT DEMONSTRATE MANIFEST INJUSTICE.**

Reconsideration  may  be  granted  where  it  is  needed  to correct  a  clear  error  of  law  or  fact  or  to  prevent  a  "manifest injustice."    Plaintiffs  utterly  failed  to  demonstrate  that  any of  the  holdings  in  question  lacked  support  in  the  record. Plaintiffs  offered  no  legal  arguments,  cited  no  cases  and offered  no  analysis  whatsoever  to  show  that  these  rulings  were incorrect.    They  also  failed  to  demonstrate  how  injustice  would result  if  these  matters  are  not  reconsidered.    Plaintiffs  had over  three  years  to  conduct  discovery  in  support  of  their  claims and  develop  the  factual  and  legal  bases  for  their  arguments  that H&S  and  Peck  were  guilty  of  malpractice.    Despite  having  ample opportunity  to  make  their  case,  they  repeatedly  failed  to  pursue their  claims  in  a  timely  manner  and  cannot  demonstrate  that  they

are entitled to the relief that was previously denied.  Simply, there was no deprivation of Plaintiffs' rights whatsoever. Therefore, the District Court was correct in holding that Plaintiffs merely sought to relitigate issues already decided because they simply did not like the outcome.

### 2. **THE DISTRICT COURT CORRECTLY REJECTED PLAINTIFFS' CLAIMS THAT RECONSIDERATION WAS PROPER BASED ON PREVIOUSLY UNAVAILABLE EVIDENCE.**

In order to permit reconsideration under New Jersey Local Civil Rule 7.1(i), "the moving party must present new evidence that would alter the disposition of the case." _Interfaith Community Org., Inc. v. PPG Indus._, 702 F. Supp. 2d 295, 317 (D.N.J. 2010).  Here, the District Court concluded that the "new" evidence relied on by Plaintiffs was neither "unknown nor unavailable" at the time of the motions in question.  There are several reasons why the District Court's conclusions should not be disturbed.

First, plaintiffs did not demonstrate any "new" evidence that could not have been offered to the Court previously.  They relied mainly on emails from 2007-2011 that were in their possession before this litigation even commenced.  While they also cited portions of the transcripts from the depositions of Matthew Durst and Kelley Peck, those depositions were taken on April 28 and 29, 2015, respectively, nearly three years after the case commenced.  There was no explanation offered by

Plaintiffs for why they waited so long to take these depositions. There was also no explanation offered for why Plaintiffs waited nearly four months to file their reconsideration motion following these depositions or why they waited until after discovery ended to do so.

Moreover, the deposition testimony relied on by Plaintiffs did nothing whatsoever to alter the disposition of the case or the earlier rulings by the District Judge and/or Magistrate Judge. Interfaith Community Org., 702 F. Supp. 2d at 317. The motions for summary judgment granted by the District Court on August 5, 2013, and January 13, 2015, were purely legal rulings stemming from the settlement of related litigation in the Superior Court of New Jersey in 2011. The deposition testimony of Kelley Peck and Matthew Durst did not impact those findings in any way, shape or form.

This testimony also did not alter the fact that Plaintiffs' attempted claim for malpractice against Yacovelle would have been futile. Specifically, Plaintiffs' malpractice claim was and remains futile due to the District Court's finding that collateral estoppel barred the relitigation of the fairness of the settlement in the State Court Litigation. Thus, there was simply no basis to assert a claim against Yacovelle and Plaintiffs' motion seeking leave to assert such a claim was

28

properly denied, as was the motion for reconsideration appealed from here.

## CONCLUSION

For all of the foregoing reasons, the District Court's orders granting summary judgment in favor of Matthew Durst should be affirmed. Similarly, the orders denying Plaintiffs' motion for leave to amend their complaint and for reconsideration should also be affirmed.

Respectfully submitted,


By:  /s/ John A. Yacovelle
     John A. Yacovelle


Dated:  July 27, 2016

## <u>CERTIFICATION OF COMPLIANCE AND SERVICE</u>

I, John A. Yacovelle, hereby certify as follows:

1.   I am an attorney at law duly admitted to practice in the State of New Jersey.  I am also admitted to practice law before this Court.

2.   This brief complies with the type-volume limitation of Fed. R. App. P. 33(a)(7)(B) because this brief contains 5,984 words.

3.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Courier New, 12 point.

4.   This brief complies with the requirement of Third Circuit Local Rule 31.1(c) because the text of the brief filed electronically through the Court's CM/ECF system is identical to the text of the paper copies filed with the Court.

5.   This brief complies with the requirements of Third Circuit Local Rule 31.1(c) because a virus check of this file was performed using Microsoft Security Essentials 4.2.223 and no virus was detected.

6.   On July 27, 2016, I caused this Brief of defendant/ appellee Matthew Durst and the Certificate of Compliance and Service to be electronically filed with the Court and served upon all counsel of record.

7.   On July 28, 2016, I caused seven (7) hard copies to be served on the Court by overnight delivery to the following address:

> Office of The Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, Pennsylvania  19106-1790

8.   On July 28, 2016, I caused one (1) hard copy and Certificate of Service to be served on the following by overnight delivery:

> Mr. Steven Durst
> 23 Oakwood Drive
> Medford, New Jersey 08055
> Tel.:  (609) 953-6718
> Plaintiff *Pro Se*

> William F. O'Connor, Jr.
> McElroy, Deutsch, Mulvaney & Carpenter, LLP
> 1300 Mount Kemble Avenue
> P.O. Box 2075
> Morristown, NJ  07962-2075
> Attorneys for Defendant/Appellee, Halloran & Sage, LLP

> Paul H. Zoubek, Esq.
> Montgomery, McCracken, Walker & Rhoads, LLP
> Liberty View, Suite 600
> 457 Haddonfield Road
> Cherry Hill, New Jersey 08002-2220
> Attorneys for Defendant/Appellee, Robinson & Cole, LLP

31

Christopher P. Leise, Esq.
White and Williams, LLP
Liberty View, Suite 400
457 Haddonfield Road
Cherry Hill, New Jersey 08002-2220
Attorneys for Defendant/Appellee, Kelley Galica-Peck, Esq.


I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.


/s/  John A. Yacovelle
John A. Yacovelle


DATED: July 27, 2016